Opinion issued on May 30, 2002




 







In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00073-CR






RANDALL ANTHONY GARCIA, Appellant


V.


STATE OF TEXAS, Appellee






On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 486198






O P I N I O N

 A jury convicted appellant, Randall Anthony Garcia, of murder, and the trial
court assessed punishment at confinement for 80 years. In thirteen points of error,
appellant complains the trial court erred in admitting evidence of appellant's
extraneous offenses; admitting the former testimony of a witness; denying appellant's
request for a jury instruction; admitting photographs obtained following an illegal
arrest; denying appellant's request for a limiting instruction; vindictively sentencing
appellant; and (7) finding appellant had used a deadly weapon. 

 We affirm.

BACKGROUND

 Appellant and his wife, complainant, were married in 1983, and had a child in
1984. The couple separated in 1987. While the divorce was pending, complainant
was awarded temporary custody of the child. Appellant was dissatisfied with the
arrangement, and, in September 1987, during a period of visitation, he took the child
to Miami. Complainant reported appellant to police, who arrested appellant at a
Miami airport. Appellant returned to Houston, where he was charged with
interference with child custody. The divorce court terminated appellant's rights to
visitation. On October 8, 1987, appellant was formally arraigned for interfering with
child custody. The next morning, police found complainant dead in her apartment;
she had been beaten, strangled, and stabbed. 

 In June 1989, a jury found appellant guilty of murder, and Judge Jay Burnett
assessed punishment at 40 years confinement. Appellant successfully appealed his
conviction. (1) 

 In February 1997, appellant was retried. The jury was unable to agree on a
verdict, and, in March 1997, Judge Burnett declared a mistrial.

 In September 1999, appellant was tried for the third time. A jury found
appellant guilty of murder, and Judge Woody Densen assessed punishment at 80
years confinement. This appeal followed.

EXTRANEOUS OFFENSES

 In point of error one, appellant asserts the trial court erred in admitting
evidence of his extraneous offenses because the State did not give him notice as
required by rule 404(b) of the Texas Rules of Evidence. Rule 404(b) states:

 (b) Other Crimes, Wrongs or Acts. Evidence of other crimes,
wrongs, or acts is not admissible to prove the character of a person in
order to show conformity therewith. It may, however, be admissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident, provided
that upon timely request by the accused in a criminal case, reasonable
notice is given in advance of trial of intent to introduce in the State's
case-in-chief such evidence other than that arising in the same
transaction. 


Tex. R. Evid. 404(b). 

 Prior to the second trial, on August 16, 1994, appellant's attorney, Allen C.
Isbell, filed a "request for notice of [S]tate's intention to introduce evidence of other
crimes, wrongs or acts (adjudicated or unadjudicated[)] in punishment pursuant to
article 37.07 C.C.P." In response, the State filed, on September 1, 1994, a notice of
intent to use the following extraneous offenses: interference with child custody;
harassment; stalking; domestic violence; and terroristic threat. 

 Prior to the third trial, on June 24, 1999, appellant's current attorney, Dan
Cogdell, filed a notice of request for 37.07, 38.37(b), 404(b), and 609(f) evidence. 
In response, the State filed, on June 25, 1999, a notice of intent to use evidence of
other crimes, wrongs, or acts. The notice alleged that appellant, "while incarcerated
in the Texas Department of Corrections, violated prison rules by possessing
contraband, namely, cold medicine."

 At the third trial, the State offered, during its case-in-chief, evidence that
appellant had, in the past, interfered with child custody, stalked complainant, and
assaulted complainant with a gun. Appellant objected that he had not been given
notice of the State's intent to introduce such evidence, as required by rule 404(b). He
argued: "The only thing we got notice pursuant to our written request for notice was
this cough syrup remedy." The State agreed, but added: "[T]here are prior notices
on file that were made by the prosecutors before on the two trials." Appellant did not
contest that notice had been given to prior counsel. He was "satisfied that [the prior
notices were] in the Court's file," but argued new notice was required. The trial court
found the State had complied with the notice requirement in rule 404(b) and admitted
the evidence.

 The purpose of rule 404(b) is to remove the element of surprise. The record
shows Codgell was not surprised by the State's introduction of extraneous offense
evidence. It was clear Cogdell was familiar with the trial court's file and the records
from the prior trials. Given such knowledge, Cogdell was provided sufficient notice
to prepare a defense to counter such evidence. He demonstrated his preparation by
cross-examining the State's witnesses about the extraneous offenses. Cogdell's filing
of a motion in limine is further evidence he had actual knowledge of the extraneous
offenses and the State's intent to use them. Under these facts, we cannot conclude
the trial court erred in admitting the evidence of appellant's extraneous offenses.

 Appellant relies on Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim. App.
1995), Neuman v. State, 951 S.W.2d 538, 540 (Tex. App.--Austin 1997, no pet.), and
Dodgen v. State, 924 S.W.2d 216, 218-19 (Tex. App.--Eastland 1996, pet. ref'd), for
the proposition that the mere opening of the State's file does not satisfy the
requirement that the State give notice of intent to introduce, in its case-in-chief,
evidence of appellant's extraneous offenses. Unlike Buchanan, Neuman, and
Dodgen, this case involves the trial court's file, and, therefore, appellant's reliance
on these cases is misplaced. 

 We overrule point of error one.FORMER TESTIMONY

 In points of error two, three, and four, appellant asserts the trial court violated
his Sixth Amendment right to confrontation of witnesses when it admitted the former
testimony of Debra Hill, complainant's neighbor. See U.S. Const. amend. VI. He
complains Hill's former testimony was not admissible as a hearsay exception because
the State did not use due diligence to find her. 

 Former testimony is "testimony given as a witness at another hearing of the
same or a different proceeding, if the party against whom the testimony is now
offered had an opportunity and similar motive to develop the testimony by direct,
cross, or redirect examination." Tex. R. Evid. 804(b)(1). Former testimony is
admissible as a hearsay exception if the declarant is unavailable as a witness. Id. A
declarant is unavailable if she is absent from the hearing, and the proponent of the
declarant's statement has been unable to procure her attendance or testimony by
process or other reasonable means. Id. at 804(a)(5).

 Hill's testimony from the first trial shows she lived with her two children in the
"[n]ext apartment over." The two apartments, which were "exactly the same except
they're opposite," shared a common stairwell. Facing the stairwell are windows. On
October 9, 1987, between 7:00 a.m. and 7:15 a.m., Hill heard loud noises next door. 
There was "bumping, like somebody being slammed against the wall." A woman was
making noises "like it hurt to be banged around." Hill reported the noises to the
manager. A couple of minutes later, Hill looked outside the window. At first, Hill
saw nothing; she only heard someone approaching the stairwell. Then, she saw a man
fitting appellant's description coming up the stairs. Hill testified: "He was male,
under 30, squarely built, pretty solidly built, olive complexion. He was probably
Hispanic, possibly. He wasn't white . . . . He had clothes on[:] jeans, faded blue
jeans, shortsleeved shirt, hat, [and] glasses." The man "hurried up the stairs, went in
next door and shut the door and that stopped the noise from being so loud." Four or
five minutes passed before the noises stopped.

 More than 10 years had passed since the first trial, and Hill had moved to
another state. The State wanted to present, by transcript, Hill's testimony from the
first trial. Appellant objected, arguing the State had not used due diligence to find
Hill. The trial court found Hill was unavailable and admitted Hill's testimony by
transcript. 

 To introduce the former testimony of an unavailable witness, the proponent of
the testimony must have made a good faith effort to obtain the witness's presence at
trial. Barber v. Page, 390 U.S. 719, 724-25, 88 S. Ct. 1318, 1321-22 (1968); Urbano
v. State, 808 S.W.2d 519, 521 (Tex. App.--Houston [14th Dist.] 1991, no pet.). The
rules, however, do not require a proponent to perform every improbable effort that,
in hindsight, might have produced the witness. Urbano, 808 S.W.2d at 522. "Rule
804(a)(5) does not require a proponent to butt his head against a wall just to see how
much it hurts." Id. 

 The State's investigator, Bruce Frank, testified that he tried to find Hill to
testify in appellant's second and third trials. Frank checked driver's license records
to find a current address. He found that Hill, who had changed her name to Givens,
at one point had an address in Oklahoma City, Oklahoma. Frank searched telephone
records, but he was unable to find a phone number for her. The State had an out-of-state subpoena issued for the Oklahoma address in June 1999. Hill was not present
at the September 1999 trial.

 On cross-examination, Frank admitted he had not: (1) contacted any utility
companies to find a current address; (2) visited Hill's last known address; (3) spoken
to Hill's relatives; (4) traced any car Hill might have registered in Oklahoma; or (5)
spoken with her last known employer. 

 Appellant relies on Reyes v. State, 845 S.W.2d 328, 331-32 (Tex. App.--El
Paso 1992, no pet.), and Otero-Miranda v. State, 746 S.W.2d 352, 355 (Tex.
App.--Amarillo, pet. ref'd, untimely filed). However, unlike Reyes and Otero-Miranda, the State in this case used means other than the mere issuing of a subpoena
to find Hill. Frank checked driver's license records and found that Hill had a new
name and address. The State then issued a subpoena for Hill at the new address. 
Frank also checked telephone records, but was unsuccessful. More than ten years had
passed since Hill had testified at the first trial. The trial court could have concluded
from the evidence that the State exercised due diligence by pursuing other reasonable
means to find Hill. Under such evidence, we cannot conclude the trial court abused
its discretion in holding Hill was unavailable. See Urbano, 808 S.W.2d at 522
(reviewing a trial court's determination of availability for abuse of discretion). 

 We overrule points of error two, three, and four.

LESSER-INCLUDED OFFENSE

 In point of error five, appellant complains that, at the guilt/innocence phase of
trial, the trial court erred reversibly in denying his request for an instruction on
voluntary manslaughter as a lesser-included offense of murder. 

 A defendant is entitled to an instruction on a lesser-included offense if (1) the
lesser included offense is included within the proof necessary to establish the offense
charged, and (2) some evidence exists in the record that would permit a jury to
rationally find that, if the defendant is guilty, he is guilty of only the lesser-included
offense. Schweinle v. State, 915 S.W.2d 17, 18 (Tex. Crim. App. 1996); Caicedo v.
State, 981 S.W.2d 817, 818-19 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd). 

 A person commits murder if he (1) "intentionally or knowingly causes the
death of an individual," or (2) "intends to cause serious bodily injury and commits an
act clearly dangerous to human life that causes the death of an individual." Tex. Pen.
Code Ann. §19.02 (b) (Vernon 1994). 

 A person commits voluntary manslaughter "if he causes the death of an
individual under circumstances that would constitute murder under Section 19.02 of
this code, except that he caused the death under the immediate influence of sudden
passion arising from adequate cause." (2) Moore v. State, 969 S.W.2d 4, 16 (Tex. Crim.
App. 1998). Sudden passion is "passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which
passion arises at the time of the offense and is not solely the result of former
provocation." Id. at n.1. Adequate cause is "cause that would commonly produce a
degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection." Id.

 Appellant contends, and the State agrees, that voluntary manslaughter is a
lesser-included offense of murder. The issue, then, is whether some evidence exists
that would permit a jury to rationally find that, if appellant is guilty, he is guilty only
of voluntary manslaughter. Appellant contends there is such evidence. 

 Webster Police Detective W. Corbin conducted the investigation of
complainant's murder. Appellant relies on Corbin's testimony that the murder was
a "crime of passion." Corbin's testimony, however, does not describe any mental or
emotional state. He merely testified the evidence at the scene--"no forced entry,
nothing missing, the wounds on the complainant"-- showed the crime was one of
passion, not property. 

 Santos Flores was appellant's friend. Appellant relies on Flores's testimony
that appellant was upset about the custody arrangement. After appellant lost all
visitation rights, "he was emotional, crying and he was upset." Two days before
complainant was killed, appellant called complainant from Flores's house. Appellant
asked complainant if he could see the child, but complainant refused. He then told
Flores "he was so mad that he could kill [complainant]." 

 Evidence of prior arguments or discord, as in this case, will not establish the
needed provocation. Willis v. State, 936 S.W.2d 302, 309 (Tex. App.--Tyler 1996,
pet. ref'd). Passion resulting from former provocation is insufficient. Hobson v.
State, 644 S.W.2d 473, 478 (Tex. Crim. App. 1983). 

 Even if complainant's refusal to let appellant see their son provided adequate
cause for appellant's passion, the passage of two days shows that appellant did not
act immediately under the influence of that passion. See Gaston v. State, 930 S.W.2d
222, 225 (Tex. App.--Austin 1996, no pet.). Further, when, as in this case, the
defendant creates the circumstances that instigate the inflaming of his passion (i.e.,
termination of visitation rights following appellant's taking the child to Miami), an
instruction on voluntary manslaughter is not necessary. See Willis, 936 S.W.2d at
308-09. 

 Under the evidence, an instruction on the lesser-included offense of voluntary
manslaughter was not required, and, therefore, the trial court did not err in denying
appellant's request. 

 We overrule point of error five.

PICTURES In points of error six, seven, and eight, appellant complains the trial court erred
reversibly in admitting pictures obtained following an illegal arrest, in violation of
his rights against unreasonable search and seizure. See U.S. Const. amend. IV; Tex.
Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2001). 

 The State introduced pictures of appellant's face and clothed, upper body. 
Appellant objected, arguing these pictures were the fruits of an illegal arrest. The
State agreed the pictures were taken following the warrantless arrest of appellant, but
argued the pictures could be used to rebut a false impression. The trial court
overruled appellant's objections and admitted the pictures.

 On appeal, the State contends the pictures were necessary to establish
appellant's identity and to show "how appellant looked on the day of the crime, and
to dispel any suggestions by the defense that appellant did not match [McNelley's]
description . . . ." 

 A defendant's face is not a suppressible fruit of an illegal arrest. U.S. v. Crews,
445 U.S. 463, 478, 100 S. Ct. 1244, 1253 (1980); Pichon v. State, 683 S.W.2d 422,
426 (Tex. Crim. App. 1984); Blondett v. State, 921 S.W.2d 469, 473 (Tex.
App.--Houston [14th Dist.] 1996, pet. ref'd); Mungia v. State, 911 S.W.2d 164, 166
n.5 (Tex. App.--Corpus Christi 1995, no pet.). Therefore, the trial court did not err
in admitting appellant's pictures. 

 We overrule points of error six, seven, and eight.


LIMITING INSTRUCTION

 In point of error nine, appellant complains the trial court erred reversibly in
denying his request for a limiting instruction.

 Reverend Dominic J. Pistone counseled appellant. Prior to the first trial,
Pistone gave police the following statement:

I first met Randall Garcia a few months before October 1987. He came
to my church to discuss problems he was having with his wife . . . . I
received a call one morning from Randall Garcia. He said the police
think I killed her. I asked him what happened, what he did mean [sic]. 
He told me that he went to the parking lot of her [apartment] before she
left for work to see if she was with another man and to see about the
safety of his son. He said he saw someone around the [apartment] but
did not go up to the [apartment]. He waited and then went to the
[apartment] and knocked, but no one answered. He said he thought that
someone saw him around the [apartments] and [therefore] they think I
did it. I asked Randall if he did it. He said no. He said he would not do
anything to hurt her or his son. I told him that he should not have been
there. He said I know. 


 At the first trial, Pistone testified, in relevant part: 

Q: On the morning of the death of Ileana Patricia Garcia, did you
receive a phone call from the defendant, Randall Garcia?


A: Yes.


Q: Sir, I want to direct your attention to the morning when Patricia
Ileana was killed, October [9], 1987. Did you have an occasion
that morning to receive a call from Randall?


A: Yes.


Q: Will you tell the ladies and gentlemen of the jury what, if
anything, he said to you?


A: He told me in essence that they think I killed Ileana.


Q: Did he tell you why they thought he killed Ileana? 


A: Because he said somebody saw me at the apartments.


Q: And did he, in fact, tell you that he was at the apartments?


A: Yes.


Q: Then what explanation did he offer for why he was at the
apartment?


A: He was going to see Ileana, see where she got to work, see how
his son was doing, see the safety of his son.


. . . .


Q: Other than him saying somebody saw him at the apartment, did he
say he got to see Ileana?


A: I don't remember him saying that.


Q: Did he say whether he got to see his child?


A: I don't remember him saying that.


Q: He did tell you he was at the apartment that morning; is that
correct?


A: Before she went to work.


 At the third trial, the State called Pistone and questioned him about his
statement and testimony. Even after refreshing his memory by looking over the
statement and transcript of his testimony, Pistone insisted he could not remember the
details of either document. 

 The State then asked to read into evidence the transcript of Pistone's testimony. 
Appellant objected the evidence was hearsay and asked the trial court to limit the
jury's consideration of such evidence to the purpose for which it was
admitted--impeachment. The State responded it was offering the evidence under
rules 613(a), 801(e)(1(A), 804(a)(3), and 804(b)(1) of the Texas Rules of Evidence.
The trial court held impeachment was just "one of the reasons" he was admitting the
evidence and denied appellant's request for a limiting instruction. 

 Former testimony is admissible as a hearsay exception if the declarant is
unavailable as a witness. Tex. R. Evid. 804(b)(1). A declarant is unavailable if he
testifies to a lack of memory of the subject matter of the declarant's statement. Tex.
R. Evid. 804(a)(3).

 If a prior inconsistent statement is given under oath, subject to perjury at a trial,
hearing, or other proceeding, it is not hearsay and is admissible to prove the truth of
the matter asserted. See Tex. R. Evid. 801(e)(1)(A). Prior inconsistent statements,
which do not qualify as nonhearsay under rule 801(e)(1)(A), may still be admissible
for impeachment purposes. See Tex. R. Evid. 613(a). 

 Appellant correctly states testimony admitted solely for impeachment is
without probative value and cannot be considered as substantive evidence. Goodman
v. State, 665 S.W.2d 788, 792 n.2 (Tex. Crim. App. 1984); Adams v. State, 862
S.W.2d 139, 147 (Tex. App.--San Antonio 1993, pet. ref'd). When testimony is
offered and admitted for impeachment purposes only, it should be limited in the
court's charge. Adams, 862 S.W.2d at 148. 

 When, as in this case, the testimony is admitted for purposes other than just
impeachment, no limiting instruction is required. Cantrell v. State, 731 S.W.2d 84,
95 (Tex. Crim. App. 1987). Therefore, the trial court did not err in denying
appellant's request for a limiting instruction.

 We overrule point of error nine.

VINDICTIVE SENTENCING

 In points of error 10 and 11, appellant complains about his sentence. In June
1989, Judge Burnett assessed punishment at confinement for 40 years. Appellant
successfully appealed his conviction. More than ten years later, in September 1999,
Judge Densen assessed punishment at confinement for 80 years. Appellant contends
Judge Densen acted vindictively in imposing a harsher sentence on retrial following
a successful appeal, in violation of federal and state constitutional rights to due
process. 

 Due process of law requires that vindictiveness against a defendant for having
successfully attacked his first conviction must play no part in the sentence he receives
after a new trial. North Carolina v. Pearce, 395 U.S. 711, 725, 89 S. Ct. 2072, 2080
(1969); Wiltz v. State, 863 S.W.2d 463, 464 (Tex. Crim. App. 1993); Wilson v. State,
810 S.W.2d 807, 809-10 (Tex. App.--Houston [1st Dist.] 1991, no pet.). If a judge
increases a defendant's sentence after a new trial, the reasons for the increase must
affirmatively appear on the record. Pearce, 395 U.S. at 726, 89 S. Ct. at 2081. The
reasons must be based on objective information concerning identifiable conduct on
the part of the defendant occurring after the time of the original sentencing
proceeding. Id. Absent reasons affirmatively appearing on the record, a presumption
of vindictiveness arises. Wiltz, 863 S.W.2d at 464. The State has the burden of
rebutting the presumption by affirmative proof. Pearce, 395 U.S. at 726, 89 S. Ct. at
2081.

 When, as in this case, a defendant is sentenced by a different judge, the Pearce
presumption does not apply. See Jackson v. State, 766 S.W.2d 518, 521 (Tex. Crim.
App. 1988); but see Bingham v. State, 523 S.W.2d 948, 949-50 (Tex. Crim. App.
1975) (applying Pearce presumption when second judge was familiar with former
proceedings, and there was no danger of retaliation against defendant). Where the
Pearce presumption does not apply, a defendant may still obtain relief if he can show
actual vindictiveness. Texas v. McCullough, 475 U.S. 134, 140, 106 S. Ct. 976, 979
(1986); Wilson, 810 S.W.2d at 810. 

 Judge Densen indicated that he had not read the record from the first trial, and
defense counsel doubted if Judge Densen had "done so since." Under such evidence,
we cannot conclude Judge Densen was familiar with the former trial or had a
"personal stake in the prior conviction." See Jackson, 766 S.W.2d at 521. To
presume Judge Densen acted vindictively would call for speculation. See id.

 Judge Densen stated, for the record, various non-vindictive reasons for
increasing appellant's sentence. First, he made the following observations:

 The Court did hear testimony from Mr. Jacobson, which is new
testimony, the assault extraneous offense against the victim-plaintiff in
her apartment.


 Furthermore, the Court has Exhibit 73, which is a part of the pen
packet which makes a finding of misconduct on the part of the
Defendant while serving time in prison and a disciplinary report and, I
assume, punishment.


 So, for the record, the Court has heard some additional testimony
it hadn't heard in the first trial . . . .


Judge Densen then held:

 . . . . The Court finds that there was additional evidence of
extraneous offenses offered in this trial that were not tried or offered in
the 1989 trial, specifically, without going into them, Groves, the father
and son investigators, the stalking incidents, the assault against Mr.
Jacobson and the deceased victim-Complainant, also--and I agree that
it's a minor thing--the punishment that he received in prison. But these
are additional facts that were introduced into this trial that were not in
the other trials.


 As far as vindictiveness, the Court finds that this trier of facts, as
far as punishment, is a different trier of facts; and there's no
vindictiveness. 

 Appellant points to the presentence investigation report (PSI) from the first trial
as evidence Judge Densen did not rely on new or additional evidence. He contends
the PSI "outline[s] the exact same conduct which [Judge Densen] in the instant case
purportedly relied upon in increasing appellant's sentence from 40 to 80 years
incarceration." The State asserts, and we agree, the PSI "does not provide the detail
afforded by the trial testimony."

 Appellant complains "there was insufficient information concerning appellant's
subsequent conduct to justify a 40-year increase" in punishment. He was punished,
in prison, for having cough medicine, which was considered contraband. Such
conduct, appellant contends, "does not rise to the level of subsequent conduct which
would give any court sufficient reason to double appellant's punishment upon
retrial." Judge Densen was entitled to consider events subsequent to the first trial that
could have shed new light upon appellant's "life, health, habits, conduct, and mental
and moral propensities." See Pearce, 395 U.S. at 723, 89 S. Ct. at 2079. Therefore,
Judge Densen properly considered appellant's prison record.

 We conclude Judge Densen stated, on the record, sufficient, objective, and
nonvindictive reasons that justify his decision to increase appellant's sentence. See
Wilson v. State, 810 S.W.2d at 811-12 (acknowledging evidence from a witness
previously unheard and holding new judge properly considered prison infractions,
even though minor and nonviolent). Judge Densen, in determining appellant's
sentence, had wide discretion. See Wasman v. United States, 468 U.S. 559, 563, 104
S. Ct. 3217, 3220 (1984). Because Judge Densen provided on-the-record,
nonvindictive reasons for increasing appellant's sentence, there was no abuse of
discretion. See McCollough, 475 U.S. at 140, 106 S. Ct. at 979.

 In a footnote, appellant complains about his "motion for court to predetermine
punishment." He alleged the evidence was insufficient to justify an increase in
punishment and asked the court to "determine the range of punishment . . . and . . .
determine that the range of punishment cannot exceed the sentence previously
imposed upon the defendant for the same offense." Appellant contends that, by not
hearing this motion prior to trial, Judge Densen violated his rights to make an
informed decision about punishment election and to have effective representation. 
This, appellant argues, is evidence of the Judge Densen's vindictiveness. For the
reasons provided above, appellant's complaint is without merit.

 Appellant has not shown Judge Densen acted vindictively in assessing
punishment, and, therefore, his rights to due process were not violated.

 We overrule points of error 10 and 11.

DEADLY WEAPON FINDING

 In points of error 12 and 13, appellant complains the trial court's deadly
weapon finding violates his rights under the double jeopardy clause of the United
States and Texas Constitutions. He contends the trial court erred reversibly in making
an affirmative deadly weapon finding because such a finding was collaterally
estopped by the trial court's previous ruling that a deadly weapon finding was "not
applicable." The previous ruling "constituted an implied finding against such a
conclusion."

 The principle of collateral estoppel means that, "when an ultimate fact has once
been determined by a valid and final judgment, that issue cannot again be litigated
between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443-45, 90 S. Ct. 1189, 1194 (1970); Dedrick v. State, 623 S.W.2d 332, 334 (Tex. Crim.
App. 1981); Shute v. State, 945 S.W.2d 230, 231 (Tex. App.--Houston [1st Dist.]
1997, pet. ref'd). Generally, when a trial court's judgment is reversed on appeal, the
trial court's judgment is no longer valid for purposes of collateral estoppel. Shute,
945 S.W.2d at 231-32. There is an exception when the factfinder or an appellate
court determines the prosecution has not proved its case; in that event, the defendant
is protected from re-prosecution to the extent of that acquittal. Shute, 945 S.W.2d at
232. The exception does not apply here because, in a bench trial, the trial court,
regardless of the evidence, is not required to make an affirmative deadly weapon
finding. Id.; Ex parte Lucke, 742 S.W.2d 818, 820 (Tex. App.--Houston [1st Dist.]
1987, no pet.).

 The first trial court noted a deadly weapon finding was "not applicable." 
Because the decision to make such a finding was a matter of discretion for the first
trial court, we hold the third trial court was not collaterally estopped from making an
affirmative deadly weapon finding. See Shute, 945 S.W.2d at 232. 

 Relying on Travelstead v. State, 693 S.W.2d 400, 402 (Tex. Crim. App. 1985),
appellant complains the trial court erred in entering an affirmative finding that he
used a deadly weapon because (1) the State tried him as a party to the offense, and (2)
there was no evidence he used or exhibited a deadly weapon. Travelstead states that,
if the guilt of the defendant is as a party, there must be a specific finding by the trier
of fact that the defendant personally used or exhibited a weapon. Id. at 402. Unlike
Travelstead, appellant, in this case, was not tried only as a party. The jury was
charged on whether appellant himself committed the offense and whether appellant
was a party to the offense. 

 The trial court did not err in entering an affirmative finding, and, therefore,
appellant's rights against double jeopardy were not violated. 

 We overrule points of error 12 and 13.

CONCLUSION

 We affirm the judgment.

 




 Margaret Garner Mirabal

 Justice

Panel consists of Justices Mirabal, Jennings, and Duggan. (3)

Do not publish. Tex. R. App. P. 47.
1. See Garcia v. State, 829 S.W.2d 796 (Tex. Crim. App. 1992).
2. At the time of the offense, October 9, 1987, voluntary manslaughter was
defined by section 19.04 of the Penal Code. Moore v. State, 969 S.W.2d 4, 16
n.1 (Tex. Crim. App. 1998). Effective September 1, 1994, this version of
section 19.04 was repealed. Id. The former law was continued for offenses
committed before the effective date. Id. For offenses committed after the
effective date, sudden passion is an issue to be considered at the punishment
phase of trial. See Tex. Pen. Code §19.02(d) (Vernon 1994).
3. The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.