Mauro Casteneda Palacio v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-152-CR

MAURO CASTANEDA PALACIO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Mauro Castaneda Palacio of criminal solicitation of a minor and assessed punishment at ten years’ confinement.  In two points, Palacio complains that the evidence corroborating the minor solicitee’s testimony is insufficient and that the trial court abused its discretion by admitting an in-court identification tainted by an impermissibly suggestive photo lineup.  We will affirm. 

II.  Factual Background

W.K., the solicitee, is a female minor who resides in Bowie.  In September 2002, while using a computer at her grandmother’s home, W.K. and a friend entered an internet chat room, “Yahoo! Teen Shoutouts,” for the first time.
(footnote: 2)  While in the chat room, she and her friend were contacted by an individual whose screen name identified him as “killerguy26.”  During the conversation, “killerguy26" asked what W.K. and her friend looked like, where they lived, what they thought about their school, and other general questions.  The chat room conversation lasted for thirty minutes, and after it concluded, W.K. did not enter the chat room again until January 2003, when she accessed the internet from a computer at her home.

Logging onto the internet for the first time at her residence, W.K. created a screen name, “crazywhitney07,” and returned to the “Teen Shoutouts” chat room provided by Yahoo!.  W.K. saw that “killerguy26" was also in the chat room, and a conversation ensued.  W.K. was under the impression that she was speaking with another teenager because “killerguy26" “was acting like a kid or like a teenager” and because he said that he was sixteen years old.  W.K. expressly informed “killerguy26" that (at the time) she was fourteen years old. W.K. once again entered the same chat room in February 2003 and was contacted by an individual using the screen name “mauro76543.”  W.K. was not positive, but she thought that “mauro76543" was the same individual as “killerguy26” because similar questions were asked and similar conversations took place.  “Mauro76543" later contacted W.K. using the name “palacil@prodigy.net.”
(footnote: 3)  

W.K. chatted with 
“palacil@prodigy.net”
 about ten times during the months of February and March 2003.  On March 20, 2003, 
“palacil@prodigy.net”
 made sexual advancements towards W.K. and expressed his desire to meet her in order to carry out these sexual advancements.
(footnote: 4)  W.K. told 
“palacil@prodigy.net”
 where she lived, and the individual recommended meeting at Pelham Park in Bowie on March 24, 2003.  The individual further stated that he would be driving a green Jeep Liberty. 

On March 24, 2003, W.K. passed Pelham Park while riding home on the school bus, but she did not notice a green Jeep Liberty.  Later that same day, however, W.K. and her nine year-old sister, K.K., were outside of their house writing on the sidewalk with chalk when W.K. noticed a green Jeep Liberty coming around the corner.  Scared, W.K. grabbed K.K. and ran into their house. The Jeep circled the block three times and eventually pulled into the driveway of W.K.’s house.  The individual, later identified by K.K. as Palacio, exited the Jeep, approached the front door, and knocked.  W.K. instructed K.K. to tell Palacio that she was not there if he asked for her.  K.K. answered the door, and Palacio asked for W.K.  K.K. responded that W.K was not there, Palacio said that he would be back, and then he left.
(footnote: 5)  K.K. informed her and W.K.’s grandmother of what had happened, and W.K.’s grandmother reported the incident to the police.

On March 25, 2003, W.K., with her mother by her side, had a conversation with 
“palacil@prodigy.net”
 in a chat room.  The conversation appeared to refer to the events that took place on March 24, 2003.  W.K. printed and retained a copy of this chat room conversation.  

The Bowie Police Department contacted the Texas Attorney General’s Office and requested assistance with the matter.  Randy Watkins, a sergeant investigator with the Attorney General’s office, conducted the investigation. Investigator Watkins sent grand jury subpoenas to Yahoo!, SBC Internet Services, and Level 3 Communications in order to obtain the personal information of the individual, or individuals, using the screen names “mauro76543" and 
“palacil@prodigy.net.
“  The records requested from Yahoo! indicated that “mauro76543" was Mr. Mauro Palacio, resident of 2913 Kim Drive, Killeen, Texas, 76543.  The subscriber information further showed that “mauro76543" had a registration IP address of 63.254.163.195 and a login IP address of 64.196.223.38.
(footnote: 6)  The records requested from SBC Internet Services indicated that the subscriber was Mauro Palacio, resident of 2913 Kim Drive, Killeen, Texas, 76543.  Records received from Level 3 Communications indicated that the user’s IP address was 64.196.223.38 and that the customer identification was 
“palacil@prodigy.net.”
  They further showed beginning and ending session times.  
Based on the information gathered, Investigator Watkins determined that Palacio was “mauro76543" and 
“palacil@prodigy.net.”
  

Palacio was subsequently arrested and charged with criminal solicitation of a minor.  Authorities also seized three computers from Palacio’s residence. An examination of the contents of the computers revealed a profile of “crazywhitney07" and a map to 1314 Eldorado Street in Bowie, Texas, W.K.’s residence.

III.  Criminal Solicitation of a Minor

In his first point, Palacio argues that W.K.’s testimony was not strongly corroborated as to the solicitation itself and as to Palacio’s intent that W.K. actually act upon the solicitation as required under the penal code.  The State contends that it introduced evidence—exhibits and testimony—strongly corroborating W.K.’s testimony of both the solicitation and Palacio’s intent that W.K. act on the solicitation.    

A.  Corroboration Requirement

The offense of criminal solicitation of a minor contains a corroboration requirement.  
See 
Tex. Penal Code Ann.
 § 15.031(c) (Vernon 2003).  It states, “A person may not be convicted under this section on the uncorroborated testimony of the minor allegedly solicited unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor’s intent that the minor act on the solicitation.”  
Id
.  General criminal solicitation contains an almost identical corroboration requirement.
(footnote: 7) 
 See id
. § 15.03(b).  The corroboration requirement for general criminal solicitation is analogous to the corroboration requirement found in the accomplice witness statute.  
See 
Tex. Code Crim. Proc. Ann.
 art. 38.14 (Vernon Supp. 1979);
 Richardson v. State
, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985)
.  Therefore, the same test for evaluating the sufficiency of the corroboration is used.  
See Richardson
, 700 S.W.2d at 594; 
Ganesan v. State
, 45 S.W.3d 197, 201 (Tex. App.—Austin 2001, pet. ref’d).  Accordingly, because the corroboration requirement in 15.031(c) is virtually identical to the corroboration requirement in 15.03(b), we will employ the same rules used when performing a corroboration examination under the accomplice witness statute.  
See Bolton v. State
, No. 03-99-00539-CR, 2000 WL 852801, at *2-3 (Tex. App.—Austin June 29, 2000, no pet.) (not designated for publication).

When performing a corroboration examination under the accomplice witness statute, “[t]he test used to evaluate such corroboration is to eliminate from consideration the accomplice testimony and then determine whether there is other incriminating evidence tending to connect the defendant with the crime.”  
Richardson
, 700 S.W.2d at 594
.  The corroboration evidence need not directly link the defendant with the crime or be sufficient in itself to establish guilt.  
Id
.  Moreover, “the court should consider the combined weight of the non-accomplice evidence even if it is entirely circumstantial.”  
Id
.

B.  The Testimony of W.K., the Minor Solicitee, Was Strongly Corroborated as to the Solicitation Itself and Palacio’s Intent That W.K. Act on the Solicitation. 

In the present case, we eliminate W.K.’s testimony and examine the remaining evidence to determine  whether it connects Palacio to the solicitation.  
See id
.  Investigator Watkins sent grand jury subpoenas to Yahoo!, SBC Internet Services, and Level 3 Communications and learned that Palacio used the screen names “killerguy26," “mauro76543," and 
“palacil@prodigy.net.”
  The subpoenaed information further showed that 
“palacil@prodigy.net”
 resides in Killeen and logged in under this account/screen name on March 21, 23, and 25, at the same times W.K. testified the solicitation by and communications with Palacio occurred.  Additionally, Palacio’s computer contained a profile for W.K. and a map to W.K.’s house.  As the State points out, “a link was established between the victim and [Palacio].”

K.K. identified Palacio as the person who knocked on her front door and asked for W.K. 

The transcript of the chat room conversation that occurred between Palacio (
“palacil@prodigy.net”),
 W.K. (“crazywhitney07”), and W.K.’s mother after the attempted March 24, 2003 meeting also corroborates the solicitation and Palacio’s intent that W.K. act on the solicitation.  The conversation evidences and confirms not only the unique and personal relationship between the two, but the March 24, 2003 events.  Portions of the transcript read as follows:

palacil@prodigy.net:
  hi

crazywhitney07:  hi

crazywhitney07:  whats up

palacil@prodigy.net:
  not much but y u wana talk to me?

crazywhitney07:  i dont know

crazywhitney07:  i cant just talk?

palacil@prodigy.net:
  no

palacil@prodigy.net:
  because u lire to me

crazywhitney07:

palacil@prodigy.net:
  lie

crazywhitney07:  why?

palacil@prodigy.net:
  i dont see u yesterday

crazywhitney07:  i wasnt at home i told u that i went to a friends house after school

palacil@prodigy.net:
  u told me u see me out side

palacil@prodigy.net:
  and take my plates

crazywhitney07:  i dont know what ur talking about but i lied

palacil@prodigy.net:
  ok

palacil@prodigy.net:
  ur sister look cut

crazywhitney07:  what does that mean

palacil@prodigy.net:
  i only saying that

palacil@prodigy.net:
  so probably u are more sexy

crazywhitney07:  u think shes pretty in another words?

palacil@prodigy.net:
  yes

. . . .

palacil@prodigy.net:
  iso when i gona see u

crazywhitney07:  never

palacil@prodigy.net:
  ok

palacil@prodigy.net:
  bye

crazywhitney07:  y

palacil@prodigy.net:
  i say bye

crazywhitney07:  y r u leaving

palacil@prodigy.net:
  bye

palacil@prodigy.net:
  i am looking girl

palacil@prodigy.net:
  dont waste my time

. . . .

palacil@prodigy.net:
  ok why in the beginig u dont show up

crazywhitney07:  because i was excited about going to my friends house and i didn’t know u would be there

palacil@prodigy.net:
  we TALK A NITE BEFORE

palacil@prodigy.net:
  u never do a date

palacil@prodigy.net:
  and then dont show up

crazywhitney07:  i know i forgot im very sorry

crazywhitney07:  i want to c u

palacil@prodigy.net:
  a 420miles and 7 1/2 hours?

crazywhitney07:  were do u live?

palacil@prodigy.net:
  i not saying

crazywhitney07:  why

palacil@prodigy.net:
  because u take my plates

. . . .

crazywhitney07:  i want to meet u bad

palacil@prodigy.net:
  why?

palacil@prodigy.net:
  to give me up to the police

crazywhitney07:  it wont be a waste of time this time i promise

palacil@prodigy.net:
  sure

crazywhitney07:  i will be there and only me

crazywhitney07:  nobody knows about u but my sister and i

crazywhitney07:  i told her not to tell

palacil@prodigy.net:
  what about the other girl

crazywhitney07:  what othere girl?

palacil@prodigy.net:
  she was playing basket ball

crazywhitney07:  that was my neibor she knows nothing we told her u were looking 4 someone and u got the rong house

palacil@prodigy.net:
  so u was in the house

. . . .

palacil@prodigy.net:
  are u whitney father

palacil@prodigy.net:
  or mother

crazywhitney07:  no im myself they go to bed at 9:00

crazywhitney07:  if they knew i was talking to u i would be dead

palacil@prodigy.net:
  ok

palacil@prodigy.net:
  so i do ur sister like me?

crazywhitney07:  no she didnt see u the sun was in her eyes

palacil@prodigy.net:
  she see me like 3 times

crazywhitney07:  i can prove its whitney u have a green liberty jeep??rite

palacil@prodigy.net:
  yes

Palacio’s comments in the above transcription corroborate the fact that he attempted to meet with W.K. after the solicitation, that he saw W.K.’s sister, K.K., and that his intentions were to meet W.K., not just communicate in a chat room.  Palacio also acknowledged the fact that he owned a green Jeep Liberty, the same type vehicle that pulled into W.K.’s driveway.

Thus, Investigator Watkins’s testimony, K.K’s testimony, and the transcript of the conversation between Palacio and W.K. constitutes sufficient incriminating evidence to connect Palacio to the solicitation of W.K.  
See Richardson
, 700 S.W.2d at 594.  Accordingly, we hold that the testimony of W.K. was strongly corroborated as to the solicitation itself and Palacio’s intent that W.K. actually act upon the solicitation.  
See 
Tex. Penal Code Ann.
 § 15.031(c).  We overrule Palacio’s first point.

IV.  Admissibility of In-Court Identification  

In his second point, Palacio argues that the trial court abused its discretion by admitting K.K.’s in-court identification of him.  Palacio argues that K.K.’s in-court identification was tainted by an impermissibly suggestive pretrial photographic lineup.  Palacio filed a pre-trial motion to suppress K.K.’s photographic identification on the ground that the photographic lineup was impermissibly suggestive.  After a hearing, the trial court denied Palacio’s motion to suppress. 

A.  Standard of Review

The standard of review by which appellate courts review a trial court’s ruling on a motion to suppress, as set forth in 
Guzman v. State
, 955 S.W.2d 85 (Tex. Crim. App. 1997), is applicable to review of a trial court’s ruling on a motion to suppress evidence based upon a claim that an in-court identification should not have been admitted due to taint by an impermissibly suggestive pretrial identification procedure.  
See Loserth v. State
, 963 S.W.2d 770, 771 (Tex. Crim. App. 1998).  An appellate court gives almost total deference to the trial court’s ruling on mixed questions of law and fact that turn on an evaluation of the credibility and demeanor of the witnesses.  
See id
. at 772.  We review 
de novo
 mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor.  
Id
.  When a trial court does not make express findings of historical facts, as is the case here, the facts are viewed in a light favorable to the trial court’s ruling.  
See id
. at 774.  In the present case, the question of whether an identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor.  
See id
. at 772-73; 
Cienfuegos v. State
, 113 S.W.3d 481, 491 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  We therefore apply a
 de novo 
standard of review.

B.  The Pretrial Photographic Lineup Was Not Impermissibly Suggestive

A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law.  
Simmons v. United States
, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968); 
Barley v. State
, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995).  We apply a two-step analysis in order to determine the admissibility of an in-court identification: (1) whether the pretrial identification procedure was impermissibly suggestive and, if so, (2) whether the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification.  
Barley
, 906 S.W.2d at 33.
  
If the pretrial identification was impermissibly suggestive, the court will then consider the five factors enumerated in 
Neil v. Biggers
 to determine whether the impermissibly suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.
(footnote: 8)  409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972).  The analysis requires an examination of the totality of the circumstances surrounding the identification to determine if the procedure was unnecessarily suggestive.  
Barley
, 906 S.W.2d at 33; 
Webb v. State
, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).
  
Moreover, the defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive.  
Barley
, 906 S.W.2d at 34.

Every photographic spread must contain individuals who fit the rough description of the suspect.  
See Burkett v. State
, 127 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  It is not essential, however, that all of the individuals be identical.  
See id
.; 
Brown v. State
, 64 S.W.3d 94, 100 (Tex. App.—Austin 2001, no pet.).  “[N]either due process nor common sense requires such exactitude.”  
Buxton v. State, 
699 S.W.2d 212, 216 (Tex. Crim. App. 1985); 
Dickson v. State
, 492 S.W.2d 267, 271 (Tex. Crim. App. 1973).  The similarities in appearance of those individuals in the photographic spread should provide a reasonable test for the witness’s capacity to reliably identify the perpetrator.  
See Ford v. State
, 794 S.W.2d 863, 866 (Tex. App.—El Paso 1990, pet. ref’d).  Furthermore, a spread is not impermissibly suggestive merely because each photograph can be distinguished in some manner from the defendant.  
See Mungia v. State
, 911 S.W.2d 164, 168 (Tex. App.—Corpus Christi 1995, no pet.).  Suggestiveness may also be created by the manner in which the pretrial identification procedure is conducted.  
Barley
, 906 S.W.2d at 33; 
Page v. State
, 125 S.W.3d 640, 647 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  Examples of this include police pointing out the suspect or suggesting that a suspect is included in the photo spread.  
Page
, 125 S.W.3d at 647. 

Palacio argues that the pretrial photographic lineup was impermissibly suggestive because Palacio was the only Hispanic, the photographs were black and white photocopies of photographs, and the other individuals were not the same age as Palacio.

Lieutenant Wallace of the Bowie Police Department was the only witness to testify during the hearing on Palacio’s motion to suppress the photographic identification.  Lieutenant Wallace testified that the identification took place at K.K.’s residence and that he, another police officer, and K.K.’s parents were present.  W.K. and K.K. were separately shown the photos.  K.K. identified Palacio after examining the photo array for about twenty seconds; W.K. was unable to identify Palacio.  Lieutenant Wallace testified that the five photographs selected, in addition to Palacio’s photograph, were chosen because the men, like Palacio, had short hair and were similar to Palacio in size and build.  Lieutenant Wallace further testified, “We tried to pick the photos . . . that we had . . . on hand that most closely matched.”  He further testified that they all appeared to have the same complexion.  

After examining the photo spread, we conclude that the pretrial identification was not impermissibly suggestive.  
See Barley
, 906 S.W.2d at 33.  All of the individuals in the spread appear to be of similar age, size, and complexion.  
See Burkett
, 127 S.W.2d at 87.  They all have short-style haircuts, and none of them have noticeable facial hair.  Because the photographs used were black-and-white copies of photographs, there is at least one other individual who appears to be Hispanic.  
See also Zarychta v. State
, 44 S.W.3d 155, 170 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (holding photo array consisting of one male Caucasian and five male Hispanics not impermissibly suggestive where appellant was the male Caucasian). Nonetheless, K.K. had an opportunity to view Palacio when she spoke to him at the front door of her house.  She identified him on the photo spread by writing, “The guy at my ho[u]se” next to his picture.  Moreover, there is nothing in the record to demonstrate that the pretrial identification was impermissibly suggestive because of the manner in which the procedure was conducted.
(footnote: 9)  
Barley
, 906 S.W.2d at 33.  All of the photos need not be identical, and the spread is not impermissibly suggestive merely because the other photos can be distinguished from Palacio’s photograph in some manner.  
See Mungia
, 911 S.W.2d at 168.  

Thus, we hold that Palacio did not establish by clear and convincing evidence that the photo spread was impermissibly suggestive.  
See Barley
, 906 S.W.2d at 33-34.  As such, we do not reach the issue of whether the procedure gave rise to a substantial likelihood of irreparable misidentification.  
See id
. at 33.  Accordingly, the trial court did not abuse its discretion when it admitted K.K.’s in-court identification of Palacio.  We overrule Palacio’s second point.

V.  Conclusion
 

Having overruled both of Palacio’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 20, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Palacio explains “chat rooms” in his brief:

“Chat rooms” differ from other forms of internet communication, such as e-mail, in that “chat rooms” provide a group of individuals the ability to communicate instantaneously with others in a “chat room” group.  The group participants enjoy interaction on a more-or-less conversational basis.  Each individual in the “chat room” communicates by typing their input (usually using an abbreviated-language form) into the computer.  The participant’s computer screen then reveals a running record of each participant’s input in the group’s ongoing conversation.  “Chat room” participants are identified only by their screen name.   

In order to gain access to chat rooms such as those provided by Yahoo!, one must first create a profile, then select a screen name, and then enter one of many various chat rooms through which communication with others is possible. After entering a chat room, the user’s screen name will typically be listed on the right-hand side of the screen along with the other individuals who are in that particular chat room.  A user may then communicate with all of those present in the chat room or select a particular screen name listed and communicate privately with that individual.

3:
W.K. testified that she knew “mauro76543" and 
“palacil@prodigy.net”
 were the same individual because 
“palacil@prodigy.net”
 told her so.   

4:
W.K. testified that 
“palacil@prodigy.net”
 “said that he wanted to have sex with me and finger me.”  She further testified that “[h]e said that he wanted me to give him a blow job.”  Evidence was also presented that 
“palacil@prodigy.net”
 desired to “rub [W.K.’s] body” and “squeeze [W.K.’s] breasts.”

5:
W.K. testified that she thought she saw the same green Jeep Liberty drive by her school sometime shortly after this encounter. 

6:
“IP” stands for “Internet Protocal.”

7:
The legislature substituted the word “minor” for “person” in section 15.031(c).  
See 
Tex. Penal Code Ann.
 § 15.031(c).

8:
These factors include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the witness’s prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.  
Biggers
, 409 U.S. at 199, 93 S. Ct. at 382.

9:
Lieutenant Wallace testified as to what he told K.K. before she viewed the photo spread:

I told her something to the effect of we’re interested in the male subject that showed up at the house that day asking for [W.K.]  I’m going to show you a group of photographs where six males are listed.  If you see the male subject that showed up at the house, we need you to point him out if you’re absolutely sure, but do not identify anybody unless you’re 100 percent positively sure that that is the person that was here.