**Paul Anthony MUNGIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–94–147–CR.

Court of Appeals of Texas, Corpus Christi.

Oct. 26, 1995.

Rehearing Overruled Dec. 14, 1995.

David M. Jordan, Corpus Christi, for appellant.

Carlos Valdez, District Attorney, Elissa Sterling, Assistant District Attorney, Corpus Christi, for appellee.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

A jury found appellant guilty of aggravated robbery, and the trial court assessed his punishment, enhanced by two prior felony convictions, at confinement for 36 years in prison. We affirm.

■ In his first three points of error, appellant contends that he was illegally arrested, that a photographic spread was impermissibly suggestive, and that the trial court should not have admitted, during the rebuttal phase of trial, testimony concerning an unrecorded oral confession which appellant made while in custody about a month after the offense.[1]

---

1. Evidence concerning the identification procedure and arrest was admitted at a pretrial hearing. Additional evidence concerning the identifi-   cation procedures was admitted during trial. We consider all the evidence in passing on appellant's complaints. *See Hardesty v. State,* 667

The record shows that in the early morning hours of August 6, 1993, a man entered a Maverick Market convenience store in Corpus Christi. The man threatened the clerk, Billy Smith, with a knife, stole money, and fled. The incident was recorded on videotape. Smith immediately notified police and described the robber as a man with a mustache and shoulder length hair, Hispanic or Anglo with dark complexion, wearing a black shirt with zeros, a baseball cap, and jeans. The present appeal involves appellant's conviction for this offense.

On August 23, a few weeks after the Maverick Market robbery, appellant tried to cash a $250 check at a check-cashing store in Corpus Christi's Sunrise Mall. When Delma Lopez, the teller, told appellant that his check exceeded the store's check-cashing limit, appellant told her that his boss was nearby and that he would go get a smaller check. Less than five minutes later, appellant returned with a $100 check. When Lopez called the bank to check for sufficient funds, she was told the account had been closed. Appellant paced, cussed, and then asked for his identification and the check. Lopez called mall security. She told security that "somebody was here in front of my window with a check and was telling me bad names and it was stolen." Shortly thereafter, security guard Kevin Rutherford arrived, and appellant offered "to find the O'Neals" and straighten things out. Despite this initial offer of cooperation, appellant then took off running. Rutherford pursued. During the chase, appellant threw a clothing rack at Rutherford. Ultimately, Rutherford subdued, handcuffed, and took appellant to the

mall's security office.[2] The Corpus Christi police were called, and Officer Simon Hernandez responded. Hernandez talked to Lopez and was told that appellant tried to cash a stolen check. Appellant was arrested for forgery and taken to the Nueces County Jail.

On August 27, Corpus Christi Police Sergeant Paul Rivera met with Billy Smith, the Maverick Market clerk. Sergeant Rivera showed Smith a six-man photographic lineup which included appellant's photograph. Smith identified appellant as the man who robbed him.

Several days later, Texas Ranger Roberto Garza and Rivera met with appellant at the Nueces County Jail to discuss the Maverick Market robbery. Appellant was read his rights and agreed to talk to the officers. Appellant told the officers that he committed the robbery and "knew he had done wrong." Appellant pointed out that he had not hurt anyone.[3] He did not sign a written confession.

By point two, appellant contends that his arrest was illegal and that all evidence obtained from it should have been suppressed.[4] Although appellant does not point to any particular evidence as being the fruit of the arrest, we presume that he complains about the legality of the arrest because the victim's identification and his oral confession followed the arrest.[5] Appellant argues that security guard Rutherford and Officer Hernandez were not present during the alleged forgery and thus had no authority to arrest. The State argues that appellant's throwing of the clothing rack was a breach of

S.W.2d 130, 133 n. 6 (Tex.Crim.App.1984); *McDole v. State,* 579 S.W.2d 7, 8 (Tex.Crim.App. 1979); *Saenz v. State,* 670 S.W.2d 667, 671 n. 3 (Tex.App.—Corpus Christi 1984, pet. ref'd).

2. Rutherford said he is authorized to make an arrest when things are thrown or when his life is in danger.

3. Appellant testified that he never made such oral confession.

4. The exclusionary rule of the Fourth Amendment applies only to governmental action. *Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). Rutherford's actions do not implicate the Fourth Amendment exclusionary rule but apparently do implicate the

Texas statutory exclusionary rule which provides, "No evidence obtained by any officer or *other person* in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted into evidence against the accused on the trial of any criminal case...." (Emphasis ours). Tex.Code Crim.Proc. Ann. art. 38.23(a) (Vernon Supp.1995).

5. Although we ultimately hold that appellant was legally arrested, we note that even if the arrest had been illegal, a defendant's face cannot be a suppressible fruit. *Pichon v. State,* 683 S.W.2d 422, 426 (Tex.Crim.App.1984).

the peace and authorized Rutherford to arrest appellant and that Hernandez continued that arrest.

Texas statutory law defines the ability of a peace officer or other person to arrest without a warrant. TEX.CODE CRIM.PROC.ANN. arts. 14.01–.04 (Vernon 1977 & Supp.1995). The facts in the present case implicate articles 14.01 and 14.04.

Article 14.01 provides:

(a) A peace officer or any other person, may, without a warrant arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

(b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

Article 14.04 provides:

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

■ "A person is arrested when he has been actually placed under restraint or taken into custody ... by an officer or a person acting without a warrant." TEX.CODE CRIM. PROC.ANN. art. 15.22 (Vernon 1977). Nothing in the record shows that appellant was arrested until Rutherford subdued and handcuffed him. *See Morris v. State,* 739 S.W.2d 63 (Tex.Crim.App.1987); *Johnson v. State,* 838 S.W.2d 906 (Tex.App.—Corpus Christi 1992, pet. ref'd). By this time, appellant had thrown a clothing rack at Rutherford and thereby had breached the peace. Rutherford was authorized to arrest appellant under article 14.01(a). Once appellant was arrested, the State had the right to continue to hold appellant for his breach of the peace. *Knot v. State,* 853 S.W.2d 802 (Tex.App.—Amarillo 1993, no pet.).

■ The State, however, did not produce any evidence to show that Hernandez's arrest of appellant was based on anything other than forgery. Thus, we must address whether Hernandez, who was not present when the forgery was committed, had the right to arrest appellant under article 14.04.

Under article 14.04, quoted above, an arrest is authorized when "it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and the offender is about to escape." Forgery is a felony. TEX.PENAL CODE ANN. § 32.21(d) (Vernon Supp.1995). Appellant tried to flee after the offense. Thus, the only other issue is whether Hernandez had satisfactory proof of the crime from a credible person.

The record shows that Lopez, who told Hernandez about the forgery, was not exactly accurate in relaying what the bank had told her. While Lopez told Hernandez appellant's checks were stolen, the bank had never told that to Lopez. The bank merely told her that they had had problems with the account and that the account was closed. Lopez concluded herself that the checks were stolen and told that to the mall security and police. The record also shows, however, that the checks had indeed been stolen two days earlier during a robbery on North Beach in Corpus Christi. Thus the information Lopez supplied to Officer Hernandez was accurate, even though Lopez did not actually know, but only concluded, that the checks were stolen.

■ For analyzing whether an officer had probable cause to arrest when receiving information from a crime victim or witness, the focus does not appear to be on the validity or accuracy of the information, but on whether the officer was justified in relying on what was told to him. The modern position is that "any person purporting to be a crime victim or witness may be presumed reliable, though the police must remain alert to the existence of any circumstances which would make that presumption inoperative in a particular case." W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 3.4(a), p. 719 (West 1987). Our analysis in *Ramirez v. State,* 658 S.W.2d 808, 810 (Tex.App.—Corpus Christi 1983), *aff'd,* 672 S.W.2d 480 (Tex. Crim.App.1984), is consistent with this approach. *See Williams v. State,* 621 S.W.2d 613, 614–15 (Tex.Crim.App.1981). We there-

fore find that Hernandez was justified in believing that Lopez was a credible person within the meaning of article 14.04, that Hernandez had satisfactory proof that a felony was committed, and that appellant had tried to escape. Hernandez did not act improperly. Appellant's second point of error is overruled.

In point one, appellant alleges that the photo spread shown to Billy Smith was unconstitutionally suggestive. The defendant must show by clear and convincing evidence that the identification was so tainted as to give rise to a very substantial likelihood of irreparable misidentification. *Madden v. State*, 799 S.W.2d 683, 695 (Tex.Crim.App. 1990).

Appellant claims the spread is suggestive because it contains persons with different facial features and eye color. Appellant claims that his photograph has a lighter background than the others, that he is wearing a darker shirt, and has lighter hair. He claims the spread contains one person who is obviously Anglo and one who has fewer Hispanic features. We have reviewed the photographs and find no error in the trial court's decision to permit the victim's identification testimony.

While it is the better practice to use photographs which portray persons whose every features match, neither due process of law nor common sense requires such procedure. *See Ward v. State*, 474 S.W.2d 471, 476 (Tex.Crim.App.1971); *Mayfield v. State*, 803 S.W.2d 859, 867 (Tex.App.—Corpus Christi 1991, no pet.). Here, the victim described the robber as either Hispanic or Anglo. The photo spread contains photographs of similar-looking Hispanic and white males. The spread depicts men of about the same age, skin tone, hair length, and facial hair. Obviously, photographs of six different persons will contain some distinctions. But, a photo spread is not improperly suggestive merely because each photograph can be distinguished in some manner from the defendant's. Considering Smith's description of the robber, differences in ethnicity, body fat, eye color and hair color are not material.

Likewise, there are differences in the photographs' background color and brightness, but these differences are insignificant. *See Doescher v. State*, 578 S.W.2d 385, 387 (Tex. Crim.App.1978) (photospread not suggestive even though only defendant's photograph had a height-line scale in background). Appellant's photograph, while marginally lighter than the others, is not so different from the remainder as to be suggestive.

Appellant also complains that the photospread is suggestive because only he wore a dark colored shirt. While appellant is the only person wearing a dark shirt, we fail to see how this difference makes the photograph suggestive. Smith described the robber as wearing a black shirt. None of the pictured suspects, including appellant, are pictured in black in the photograph spread. Smith testified that he chose appellant's photo because it resembled the robber. At trial, he testified that he was absolutely certain of his identification based on the eyes and other facial features.

Finally appellant contends the identification procedure was tainted because Smith knew that one of the photographs depicted a suspect. Rivera showed Smith the photographs and asked if he recognized anyone. Rivera did not suggest any particular photograph or even tell Smith that he had a suspect in custody. While Smith testified that he figured Rivera would only be showing him photographs if he had a suspect, the procedure Sergeant Rivera used was not suggestive. *See Rivera v. State*, 808 S.W.2d 80, 95 (Tex.Crim.App.1991). Appellant's first point is overruled.

By point three, appellant contends the trial court erred by admitting evidence of appellant's oral confession because oral confessions are admissible in only limited situations not applicable here. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979 & Supp.1995). Appellant's position is without merit. An unrecorded oral confession may be admitted for impeachment after an accused testifies. *Girndt v. State*, 623 S.W.2d 930, 931–32 (Tex.Crim.App.1981).

At trial, appellant testified in his own defense. He denied committing the robbery

and denied ever confessing to the crime. Appellant's step-mother testified that appellant was home on the night of the Maverick Market robbery and did not have clothing which matched the robber's. On rebuttal, the trial court permitted Garza and Rivera to testify that appellant had orally confessed to the Maverick Market robbery when they spoke to him on August 30. Point three is overruled.

■ By point four, appellant alleges the trial court should have granted a motion for mistrial when the prosecutor violated a court order not to display penitentiary packets to the jury during the guilt-innocence phase of trial. Shortly after securing the order, appellant moved for mistrial claiming that the prosecutor was "displaying the penitentiary packets in such a way that the photograph is visible to the jury." The trial court overruled the motion. Appellant has the burden to present a record to show error requiring reversal. Tex.R.App.P. 50(d). In the absence of any record to show what the prosecutor did, we cannot find that the trial court abused its discretion in overruling the mistrial motion. *See Garcia v. State,* 513 S.W.2d 559, 561–62 (Tex.Crim.App.1974); *Baker v. State,* 797 S.W.2d 406 (Tex.App.—Fort Worth 1990, pet. ref'd). Point four is overruled.

The judgment of the trial court is affirmed.