**Affirmed and Memorandum Opinion filed December 20, 2012.**



In The

# Fourteenth Court of Appeals

---

NO. 14-12-00172-CR
NO. 14-12-00173-CR

---

**TORRIAN MARCEL GLASS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause Nos. 1294931, 1294932**

---

## MEMORANDUM OPINION

Appellant Torrian Marcel Glass appeals his conviction for aggravated robbery, asserting that he was denied effective assistance of counsel when his trial counsel failed

to object to the State's introduction and use of allegedly suggestive photo arrays and subsequent in-court identifications. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by two, separate indictments with the offense of aggravated robbery, involving two complainants in the same incident. The indictments alleged use of a deadly weapon in the commission of the offense and alleged enhancement by a prior conviction. Appellant pleaded "not guilty" to both charges, and proceeded to trial.

According to the trial record, in late January 2011, Kelvin King met with appellant to purchase "rims" for a vehicle. Appellant had advertised the rims for sale on the internet. Several days later, on February 1, 2011, King, along two friends (hereinafter collectively referred to as "witnesses"),[1] met with appellant and a second individual to purchase an additional set of rims in another transaction. The witnesses spent at least two hours with appellant, during which time they traveled to multiple locations in the area by following appellant in their vehicle. At one of those locations, the parties exited their respective vehicles to wait for someone to deliver the rims. After waiting for some period, King signaled to his friends that he wanted to leave. Before they could leave the scene, appellant and the second individual brandished firearms, pointed the firearms at the witnesses, and took their money and cell phones. The second individual entered the witnesses' car, forcing King at gunpoint to drive to a different location; appellant followed them in his vehicle. Once at the new location, the bayou, appellant forced King to turn over the shoes he was wearing. After wiping down the witnesses' vehicle to remove fingerprints, appellant and the other man fled the scene. The witnesses called the

---

[1] King was accompanied by two friends, one of whom was another named complainant in this case; the other friend was not a complainant.

police from a nearby gas station and were able to recite the full license plate number of the vehicle appellant was driving and a description of appellant and the other individual.[2]

With the information from the witnesses, an investigating officer identified appellant as the owner of that vehicle from a previous traffic citation. In this research, the officer also found appellant's photo associated with records from the Department of Public Safety. According to the officer, that photo of appellant matched the description given by the witnesses.

The officer compiled a photo array using appellant's photo from the Department of Public Safety, along with photos of five other individuals from the Department of Public Safety. The photo array contained six photos. According to the officer, appellant's photo was randomly placed within the array with the other photos of individuals with similar physical characteristics. The officer met with the two complainants, individually, two days following the incident, took their statements, and showed each complainant a copy of the photo array. The officer purposefully met with the two complainants separately, one right after another, in a closed office to ensure that their statements were their own. The investigator met with the complainants' friend four days following the incident, took his statement, and showed the friend another copy of the same photo array.

As reflected in the record, prior to showing the witnesses the photo array, the officer admonished each witness and asked each of the men to sign a form indicting an understanding of the admonishments. In the admonishments, the witnesses were instructed that there was no obligation to select a photo, that the suspect might not be in the photo array, and that the witnesses should not discuss the identification with anyone else. Additionally, the officer gave each of the men a warning not to discuss the photo array with anyone and advised that they were under no obligation to select any of the

---

[2] Police did not receive a sufficient description or lead on the second individual involved in this incident to further their investigation.

photos. After receiving these admonishments, all three men positively identified appellant from the photo array as the person who committed the charged offense. A clean copy of the same photo array was shown to each of the complainants, and each of the complainants denoted, by circling appellant's photo, which photo the witness was identifying as the gunman; each of the witnesses placed his initials and the date beside appellant's photo. The investigating officer testified at trial that he did nothing to suggest to the witnesses which, if any, photo to choose and that he followed standard protocol for photo arrays.

Each of the photo arrays, bearing the witnesses' written identification of appellant were admitted into evidence as State's Exhibits 4, 5, and 6. Each of the witnesses identified appellant in court as the person who committed the charged offense. The record reflects the witnesses immediately picked appellant's photo from the array. Each of the witnesses testified that he remembered appellant's face from the time he spent with the witnesses; the witnesses claimed they could have identified appellant without the previous photo array. The record does not reflect that defense counsel asserted any objections to the admission of the photo arrays, testimony about the witnesses' out-of court identifications of appellant from the photo arrays, or their subsequent in-court identifications of appellant.

The jury found appellant guilty as charged. Appellant was sentenced to twenty-five years' confinement on each charge, with the sentences to run concurrently. Appellant now appeals his conviction.

### INEFFECTIVE-ASSISTANCE-OF-COUNSEL ANALYSIS

In a single appellate issue, appellant asserts that his trial attorney rendered ineffective assistance of counsel when his trial counsel failed to object to (1) the State's introduction of the photo arrays, which appellant characterizes as impermissibly suggestive, and (2) the witnesses' in-court identifications of appellant.

4

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex.Code Crim. Proc. Ann. art. 1.051 (West 2005). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 687–92; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App.1998).

In assessing appellant's claims, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On such a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Appellant asserts that the photo arrays were impermissibly suggestive, warranting an objection from his trial counsel. Appellant also asserts that the pre-trial identification

5

procedure was impermissibly suggestive and tainted the subsequent in-court identifications, also requiring objections from his trial counsel. When counsel is alleged to have been deficient for failing to object to the admission of evidence, an appellant must show that the evidence was inadmissible. *See Lesso v. State*, 295 S.W.3d 16, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (involving an ineffective-assistance claims for failure to object to admission of photo spread into evidence or the in-court identifications of the accused). As relevant to this case, appellant must show that the photo arrays and the identification testimony were inadmissible and that objections would have been sustained. *See id.*

An in-court identification is inadmissible if it has been tainted by an impermissibly suggestive pretrial identification procedure. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). We consider, under the totality of the circumstances, whether the pretrial photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). Because admissibility of identification testimony hinges on reliability, to warrant exclusion of the in-court identification, clear and convincing evidence must establish that the in-court identification was unreliable. *See id.*; *Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993); *Santos v. State*, 116 S.W.3d 447, 451, 455 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). If the indicia of reliability outweigh the influence of an impermissibly suggestive pretrial identification, in-court identification testimony is admissible. *See Luna*, 268 S.W.3d at 608; *Delk*, 855 S.W.2d at 706.

Appellant characterizes the photo array as being impermissibly suggestive, claiming that his photo appears to have a bright light shining on his face that draws a viewer's attention towards his photo to ensure its selection. A pretrial procedure may be suggestive, but that does not necessarily mean it is impermissibly so. *Barley v. State*, 906 S.W.2d 27, 34 (Tex. Crim. App. 1995). Suggestiveness may be implicated by the manner

6

a pretrial identification procedure is conducted, as in suggesting a suspect is included in the array, or by the context of the photo array itself, for example, when the suspect is the only individual who closely resembles the pre-procedure description. *See id.* at 33. In this case, none of the testimony from the witnesses or the investigating officer suggests an unduly suggestive procedure. The photo array was comprised of six pictures of young, black men, all with similar sizes, builds, facial features, skin color, and hair styles. *See Barley*, 906 S.W.2d at 33. A photo array is not improperly suggestive merely because the photographs of six individuals can be distinguished in some manner. *See Mungia v. State*, 911 S.W.2d 164, 168 (Tex. App.—Corpus Christi 1995, no pet.). The record reflects the witnesses' testimony that they did not notice any difference in appellant's photo in comparison to the other photos. *See Barley*, 906 S.W.2d at 33–34 (concluding that an appellant had failed to prove that an array was impermissibly suggestive when all witnesses testified they had not noticed a difference in lighting of the photos within the array). Although appellant complains about the brightness of the light in his photograph, the difference in brightness between his photo and the others is insignificant and is not impermissibly suggestive. *See id.* (concluding that the difference between photographs in an array, including sunlight on the face of one individual and different backgrounds, did not amount to an impermissibly suggestive photo array); *Mungia*, 911 S.W.2d at 168 (concluding a photo array was not impermissibly suggestive when there is a difference in the background color and brightness of an accused's photo in a photo array).

Appellant also complains that the pretrial photographic identification procedure was flawed because the witnesses allegedly had time and opportunity to consult one another and because the officer used the same photo array for each witness, which tainted the in-court identification. Exhibits 4, 5, and 6, the photo arrays at issue, each reflect just one set of initials and date beside appellant's circled photo. The officer testified that he followed procedures in compiling the photo array, in admonishing the witnesses that they were not obligated to make any identification, and specifically admonishing that the

person who committed the offense might not be included in the array. As reflected in the record, the officer presented copies of the same photo array to each of the witnesses separately. The record reflects that the two complainants, who first viewed the photo array individually on the same day, chose the same photo even though they did not have an opportunity to discuss the arrays with anyone else since they met with the officer one right after another in a closed room. The record does not support clear and convincing evidence of an impermissibly suggestive procedure in pretrial identification. *See De Vaughn v. State*, 239 S.W.3d 351, 354 (Tex. App.—San Antonio 2007, pet. ref'd) (providing that same photo array shown to two witnesses on different occasions, in which the witnesses initialed and dated the back of the photo, was not an impermissibly suggestive procedure). Additionally, even without the photo array identifications, the record evidence contains ample evidence of the identifications. The witnesses each testified at trial that they recognized appellant and they identified him in the courtroom based on their encounter with him during the commission of the offense. When, as in this case, the record reveals that the in-court identifications had origins independent of the identifications from the photo array, the in-court identifications may still be admissible. *See Lesso*, 295 S.W.3d at 24–25.

Even assuming *arguendo* that the pre-trial photo arrays and the pretrial identification procedures were impermissibly suggestive, the in-court identifications still would be admissible because, under the totality of the circumstances, there was no substantial likelihood of misidentification. *See Luna v. State*, 268 S.W.3d 594, 608 (Tex. Crim. App. 2008). In assessing reliability, we weigh the following non-exclusive factors against "the corrupting effect of any suggestive identification procedures:" (1) the witnesses' opportunity to view the criminal act; (2) the witnesses' degree of attention; (3) the accuracy of the suspect's description; (4) the level of certainty at the time of confrontation; and (5) the time between the crime and confrontation. *See id.* at 605; *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).

8

According to the record, this encounter was the second time King had met with appellant, whom he met a few days before the offense to conduct a similar transaction. The witnesses were in close proximity to appellant for several hours and were able to look at him from many angles and distances and spoke with appellant throughout the encounter. *See Bond v. State*, 29 S.W.3d 169, 172 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding that a witness who viewed a suspect three times from close and far range at different angles had a sufficient opportunity to view). Additionally, the offenses took place during daylight hours of the late afternoon, allowing for ample opportunity to see appellant. *See Jackson*, 657 S.W.2d at 129 (providing that witness had an excellent opportunity to view an individual at 5:00 p.m. in the afternoon). As all the witnesses were threatened at close range and were targets of the robbery, they were not mere casual observers and thus had reason to be attentive. *See Smith v. State*, 930 S.W.2d 277, 229 (Tex. App.—Beaumont 1996, writ ref'd) (providing that a complainant was the victim of a crime, rather than a casual observer, and therefore had more reason to be attentive). Their attentiveness was evidenced by their ability to recite appellant's vehicle's license plate number. *See Bond*, 29 S.W.3d at 172 (noting that a witness's ability to recite an appellant's vehicle license plate number was evidence that the she was highly observant at the time of the offense). The witnesses also gave a description that was sufficiently accurate for the investigating officer to locate appellant's Department of Public Safety photo. The record reflects that each of the witnesses had a high level of certainty in his identification of appellant because each witness was confident and quick to identify appellant's photo within the array. Additionally, the time between the offense and the confrontation was only a few days. *See Smith*, 930 S.W.2d at 229. Weighing this reliability against any suggestiveness of the photo-array procedure leads us to conclude that the photo identification procedure was reliable and that no substantial risk of irreparable misidentification was created so as to deny appellant due process. *See Lesso*, 295 S.W.3d at 25. We conclude the in-court identifications of appellant and identifications based on the photo arrays were admissible. *See id.*

To carry the burden of establishing that his trial counsel was ineffective for failing to object to the in-court identification testimony and to the admission of the photo arrays, appellant had to show that the evidence was inadmissible and that any objection would have been sustained. *See id.* at 25–26. Appellant has failed to carry this burden and, consequently, has failed to satisfy the first prong of *Strickland*. *See id.* at 26. Accordingly, we overrule appellant's sole issue.

The trial court's judgment is affirmed.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Christopher, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).

10